THE STATE v. M. N. BROOKS.

1. EMBEZZLEMENT.—See an indictment held good for embezzlement.
2. OFFICER—DEPUTY SHERIFF.—A deputy sheriff is an *officer* authorized to collect taxes, and as such is liable to indictment for embezzling money collected by him as taxes.
3. In an indictment for embezzlement, it is not necessary to describe *the money* or any piece of money so embezzled.

HELD, ON REHEARING.

4. A deputy sheriff is *an officer* within the meaning of the law punishing embezzlement of public money.

APPEAL from Marion.  Tried below before the Hon. James M. Rogers.

By indictment it was charged that M. N. Brooks, "an officer of the Government, to wit, a deputy sheriff in and for the county of Marion, and by virtue of his said office then and there by law a receiver of public money, to wit, a collector of the taxes for said county, and authorized to collect and receive the moneys due the Government of Texas, and then and there acting in said office, did * * * take, misapply, and convert to his own use a part of the money intrusted to him as aforesaid, to wit, the sum of one thousand dollars, money collected by him as aforesaid for the State of Texas from the citizens of Marion county, Texas, for the year 1872," &c.

Defendant excepted to the indictment—

1. Because he was not shown to be such an officer of the Government as is included in the terms of the statute defining and punishing embezzlement.

2. Because it was not shown that he was a receiver or collector of any public money due the State.

3. Because, as shown by the bill, there could exist no trust relation between him and the State.

4. Because it is not shown that he ever collected or received any money from or on account of the State.

5. No fraudulent intent is charged.

6. The indictment fails to show the kind or character of money received or appropriated by the defendant.

7. It is not shown when, from whom, or what amount of money was collected or received.

8. The official character of the defendant is not shown at the time the money was received.

9. Duplicity; and

10. The indictment is vague and uncertain, and presents no offense known to the law.

The exceptions were sustained and judgment rendered for defendant, and an appeal was taken by the District Attorney.

*George W. Smith,* for the State.

*Crawford & Crawford,* for appellee.

GOULD, ASSOCIATE JUSTICE.—This is an appeal on behalf of the State from the judgment of the District Court quashing an indictment. The indictment alleges " that on the 1st day of June, in the year of our Lord one thousand eight hundred and seventy-three, in the county and State aforesaid, one Marshall N. Brooks, late of said county, who was then and there an officer of the Government, to wit, a deputy sheriff in and for the said county of Marion, and by virtue of his said office then and there by law a receiver of public money, to wit, a collector of taxes assessed in said county of Marion, and authorized to collect and receive the moneys due the Government of Texas; and then and there, acting in said office, did then and there wickedly, willfully, unlawfully, and feloniously and fraudulently take and misapply and convert to his own use a part of the money intrusted to him as aforesaid, to wit, the sum of one thousand dollars, money collected by him as aforesaid for the State of Texas from the citizens of Marion county, Texas, for the year one thousand eight hundred and seventy-two, and also large sums of said taxes for that year to the grand jurors unknown in amount, he, the said Brooks, then and there well knowing that he was not entitled to the same, against the peace and dignity of the State."

The principal objection urged to the indictment is that a deputy sheriff is not such an officer nor such a receiver or collector of public money as is contemplated by the

statute. The statute is as follows: " If any officer of the Government who is by law a receiver or depositary of public money, or any clerk or other person employed about the office of such officer, shall fraudulently take or misapply or convert to his own use any part of such public money, or secrete the same with intent to take, misapply, or convert to his own use, or shall pay or deliver the same to any person, knowing that he is not entitled to receive it, he shall be punished by confinement in the penitentiary for a term not less than two nor more that ten years."

Paschal's Dig., arts. 1854, 1856, reads : " Under the term officer of the Government, as used in art. 235, (the one just copied,) are included * * * * assessors and collectors, and all other officers who by law are authorized to collect, receive, or keep money due to the Government."

The argument of appellee is that the deputy is appointed and paid by the sheriff, and gives bond to him and not to the State; that the sheriff, on the other hand, is designated by the Constitution and the law as the person to collect taxes—the only one with whom the State keeps an account, and the only one whom the State compensates for collecting taxes—from all which the conclusion is drawn that the deputy sheriff, in collecting taxes, acts under authority of the sheriff and in his name, and is not an officer intrusted by law with the collection of taxes. Referring to the statutes on the subject, we find that the sheriff is authorized to appoint, by instrument in writing under his hand, as many deputies as he may deem necessary, to be by him compensated for their services, one of whom, in the event of the absence of the sheriff from the county seat, shall there remain during such absence; and also to make any such appointment, and shall give bonds or other securities and accept the same from such deputy, and each deputy shall have the like authority in every respect to collect taxes within that portion of the county which may have been allotted him which the sheriff would have; but each sheriff and his sureties shall in every

respect be responsible for every act performed or omission incurred by each deputy, as though the same had been performed or incurred by himself." (Pas. Dig., art. 7615.) The statute further requires the deputy to take the same oath required of the sheriff, faithfully to discharge the duties required of him by law in the collection of taxes. (Pas. Dig., arts. 7608, 7615.) In case of the disability, death, or removal of the sheriff, the deputies are required to proceed in the collection of taxes until the vacancy is filled. (Pas. Dig., art. 7616.) In various other sections of the law the deputy, is recognized as authorized to collect taxes. (Pas. Dig., arts. 7619–7621.)

The deputy sheriff is recognized as an officer known to the law, (Miller *v.* Alexander, 13 Tex., 506,) and we think it clear, from the foregoing provisions of the statute, that he is an officer authorized by law to collect taxes due the Government. Although he is appointed by the sheriff, who may designate that part of the county within which he can act, it is the law which gives him that official authority to collect taxes, which it withholds from all persons except the sheriff and his sworn deputies. In embezzling taxes collected by him, he violates the trust reposed in him as an officer by the State, and would therefore come within the rule recognized in The State *v.* Johnson in construing the kindred statute punishing embezzlement by agents and clerks of companies and individuals. (21 Tex., 775; Pas. Dig., art. 2421.) We think, however, that the statute under which this indictment was found was intended to comprehend other cases than those where there is a breach of trust, or cases where the money embezzled was received by virtue of the office or employment. The terms, "clerk or other person employed about the office of such officer," are comprehensive enough to include a mere employee of the sheriff, though unknown to the law, and only holding the money for the sheriff. Under this view of the law, if the averments of the indictment were appropriate to charge

a deputy or an employee of the sheriff, it would be immaterial whether he had committed a breach of trust or not.

The case of the United States *v.* Hutchinson, as reported in a note to 2 Whart. Prec., 460, note *b*, has been cited as giving a different construction to a similar statute. The law of the United States under which that case was prosecuted specified, "all officers and other persons charged by this act, or any other act, with the safe keeping, transfer, and disbursement of public moneys," and was held to apply only to the legally authorized fiscal agents of the Government recognized as such at the Treasury of the United States. Our statute is not confined to those who are custodians or keepers of public money, but extends to officers who collect or receive it. In the case just referred to, the court held that a clerk for the Treasurer of the Mint, whose duties were prescribed by the Director of the Mint, and gave him charge of the moneys for the ordinary uses of the Mint, but whose name did not appear in the books, the accounts all being kept in the name of the Treasurer, did not have the legal possession of such moneys; that he only had a charge of these moneys, and was liable for their larceny, instead of for embezzlement. It is clear that the deputy sheriff has both the actual and the legal possession of the taxes which he collects, and is not subject to indictment for theft. The case differs materially from the present, both in the statute on which it was founded and in the facts.

The objection is not specially taken to the indictment that it does not allege that the sheriff had allotted to the defendant any part of the county. We think, however, this was unnecessary. The averment that he was, as deputy sheriff, collector of taxes in and for said Marion county, is sufficient to support the indictment, without setting forth the various steps by which he acquired the office or the authority. This is so, even if it be held that an allotment of a part of the county or of the whole must precede the

right of the deputy to act. The law, as printed in Paschal and in the published acts, is evidently incomplete, and is quite obscure. (Pas. Dig., art. 7615; acts of 1870.)

We think that it was unnecessary for the indictment to more specifically describe the money embezzled. To hold differently would be to require what is obviously in most cases impracticable. The language of the law, " any part of such public money," would indicate a sum or amount of money, rather than specific bills or coin. In England, where indictments for embezzlement were originally required to describe the thing embezzled, as in cases of theft, the rule has been changed by statute. Under the rules of construction prescribed by the code, we feel authorized to hold that the statute does not contemplate a specific description of the moneys embezzled, or even of any one piece thereof, as necessary. (Riley *v.* State, 32 Tex., 763.)

This disposes of all the questions discussed in appellee's brief, and it is not deemed necessary to say more in regard to the other grounds assigned in the motion to quash than that we do not consider them well taken.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

*Crawford & Crawford*, for rehearing.

The Constitution creates the office of sheriff. This must be held to be a sheriff with the same powers and authority as exercised by that officer under our former Constitution and laws, including the right to appoint his deputy.

But in addition to the duties of the sheriff under the law as it stood at the adoption of the present Constitution, and which the framers of that instrument must have had in view when they created the office of sheriff, the present Constitution imposes upon the sheriff a duty not previously exercised by that officer, that is, the collection of the taxes.

We most respectfully insist that the power and authority to collect the taxes thus given to the sheriff is ex-

clusive and cannot be lawfully exercised by any other independent officer.

When the law points out the mode and manner of doing any particular act, it excludes all other modes. This is a well-established principle, and has been frequently acted upon by this court in reference to alienations by married women of their separate estate or the homestead of the family. (Berry *v.* Donley, 26 Tex., 745; Cooley's Const. Lim., 64.)

No one would seriously contend that a deed executed out of this State, and intended for record here, could be properly admitted to record unless the acknowledgment was taken before some officer who, by the statutes of our State, was authorized to take the acknowledgment of deeds under such circumstances. (Craddock *v.* Merrill, 2 Tex., 494.)

The Constitution being the paramount law of the State, and the officers who are to run the machinery of the State Government being named in that instrument, and their duties prescribed, we cannot see how it is within the legitimate province of the Legislature to create new and independent officers, and assign to them duties which the Constitution says shall be performed by other and different officers. Can the Legislature create the office of Deputy Lieutenant Governor, and make him the presiding officer of the Senate, or clothe him with the pardoning power? Most certainly not. And why? Simply because the Constitution has declared that this power and prerogative shall be exercised by the officers designated in that instrument for this particular service or in whom this prerogative is vested.

State constitutions are not grants of but limitations upon the exercise of legislative authority; and we grant that the Legislature of the State may lawfully do whatever is not prohibited by the Constitution.

But when the Constitution declares what officer shall

perform a particular service or duty, this of itself amounts to a prohibition, and the Legislature cannot devolve this duty upon another and different officer. (Cooley's Const. Lim., sec. 64; Field *v.* People, 2 Scam., 83.)  ·

The Legislature can no more create the independent office of deputy sheriff, and make him the collector of taxes, than it can authorize the justices of the peace to grant the writs of *habeas corpus,* injunction, and other writs which, the Constitution says, may be granted by the judges of the District and Supreme Courts.

We do not deny the authority of the deputy sheriff to collect the taxes. The office of sheriff was created by the framers of our present Constitution, with reference to the well-known and long-accustomed right of that officer to appoint deputies who acted for him and in his name in all matters appertaining to his official duties; and, independent of the statute, the deputy would be authorized to collect the taxes, not as an independent officer, but for and in the name of his principal and superior, who is the sheriff, and to whom alone he is accountable.

There is no trust relation between the deputy sheriff and the State; no accounts are kept with the deputy, no drafts are or can by law be drawn upon him, and the statute is silent as to where, how, or with whom he shall make his settlements, or to whom he shall deliver the public money which may come into his hands. The name of the sheriff alone appears upon the books of the Comptroller, and against him suit must be instituted for the recovery of any taxes collected by him or his deputy, and the statement of the sheriff's account upon the books of the Comptroller is made evidence of the indebtedness of the sheriff if the balance of account should be against him in an action against the sheriff and his bondsmen. This could not be the case in an action against the deputy; and the statutes upon the subject all show that it is the sheriff who is responsible to the State, and no suit against the deputy

for money collected for taxes is authorized by law.    (Pas.
Dig., art. 7638.)

Every trustee or agent is under a legal obligation to ac-
count to his principal whenever called upon, and upon his
refusal an action lies.    It has been determined that no suit
could be maintained against a deputy sheriff for money
collected on execution by him and in his hands, but that
the party entitled to the money must look to the sheriff.
(Crocker on Sheriffs, sec. 19; 2 Comstock, N. Y., 126.)

It is very clear that had the indictment been drawn
under another clause in art. 1854, and appellee indicted as
a clerk or other person employed about the office of a re-
ceiver or depositary of public money, it would have been
good.

## ON REHEARING.

GOULD, ASSOCIATE JUSTICE.—We are asked to reconsider
this case, on the ground "that the court erroneously held
in the opinion that appellee, as deputy sheriff, was an in-
dependent officer known to the law, and as such a receiver
or depositary of public money."

The argument, briefly stated, is that the Constitution
creates the office of sheriff, and imposes on him the duty
of the collection of taxes, and that it is not competent for
the Legislature to assign this duty to any other independ-
ent officer.    Whilst the authority of the deputy sheriff to
collect taxes is admitted, it is said that in doing so he acts
for and in the name of the sheriff, and not as an independ-
ent officer.    Hence it is said he can only be indicted for
embezzlement as a clerk or employee, and not as an officer.

If the statute uses the word officers to designate only in-
dependent officers known to the Constitution, the objection
is well taken.    If, on the other hand, the act had expressly
declared deputy sheriffs to be "officers" within its mean-
ing, or if, though not so declared, such is proved to be its
proper construction, then the indictment properly charges

the defendant as an officer.   If the word be taken "in the sense in which it is understood in common language," it certainly embraces deputies and other than constitutional officers.   (Pas. Dig., art. 1630.)   It is defined more than once in the Criminal Code, and also in the Code of Procedure; and whilst the former definitions, at least, are not intended to be of general application, they certainly negative the idea that the word, when used in the code, means only an officer known to the Constitution.   For example, in the chapter of the Criminal Code concerning " Offenses relating to the arrest and custody of prisoners," it is provided: " By ' officer,' as used in this chapter, is meant any peace officer, or sheriff, deputy sheriff, constable of a beat," &c.   (Pas. Dig., arts. 1964, 1978, 1982, 1983.)   So the Code of Criminal Procedure says: "The general term ' officers' includes both magistrates and peace officers."   (Art. 2521.) " The following are peace officers : the sheriff and his deputies," &c.   (Art. 2520.)   The court did not and does not hold that a deputy sheriff is an independent officer known to the Constitution, but holds him to be an officer within the meaning of the law punishing embezzlement of public money.   The application for rehearing is refused.

REFUSED.